**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **RICKY W. MONTZ,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | ______________________ |
| **THE LINCOLN NATIONAL LIFE INSURANCE COMPANY f/k/a LINCOLN NATIONAL LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

**COMPLAINT**

Plaintiff Ricky W. Montz ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by The Lincoln National Life Insurance Company f/k/a Lincoln National Life Insurance Company ("Lincoln") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Walmart, Inc. ("Walmart"). In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policy sponsored by Walmart, Inc.

2. The Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including long-term disability benefits under policies issued or administered and underwritten by Lincoln.

3. Plaintiff seeks such benefits together with any other disability-related benefits his plan may provide based on the conditions documented in his medical records.

## JURISDICTION

4. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

7. Plaintiff Ricky W. Montz is a participant in the Plan and thus entitled to benefits available thereunder.

8. Defendant Lincoln is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9. Lincoln is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21) as it related to the time when Plaintiff's disability arose.

10. One of Lincoln's designated agent for service of process is:

The Prentice-Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery, AL 36104

11. Lincoln is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

12. Lincoln is an entity providing services to the Plan at issue.

13. Lincoln is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

**THE PLAN**

14. Walmart's LTD plan is an employee welfare benefit plan funded entirely by a long-term group insurance policy sold by Lincoln, the company which also underwrote this group policy.

15. This group policy was purchased by Walmart to confer certain benefits upon Plaintiff and other employees.

16. As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plans as that term is used in 29 U.S.C. § 1132.

17. Lincoln's group policy (and Walmart Plan Document) defines disability to include the following as it relates to Montz:

> "Disability" or "Disabled", with respect to Long Term Disability, means:
>
> 1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:
>
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

18. The policy defines "Material and Substantial Duties" as follows:

> "Material and Substantial Duties", with respect to Short Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Job and cannot be reasonably eliminated or modified.

19. Because Montz was found disabled for the entirety of the "Own Occupation" period under the policy, his continued eligibility for such benefits depends on whether he satisfies the policy's "Any Occupation" definition as of July 15, 2022.

20. The policy defines "Any Occupation" to be the following:

> "Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

21. Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff is "disabled" as this Plan defines that term pursuant to its "Any Occupation" definition.

22. There are no Plan documents made available indicating that Lincoln has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred for this Plan.

## LINCOLN'S LIABILITY

23. Montz's medical records document that he suffers from coronary heart disease, type I diabetes, hypertension, and hyperlipidemia, among other things.

24. As to these conditions, two of Montz's primary treating physicians have varying opinions based on the each's unique specialization and scope of treatment as to that Montz's abilities to exert forces at any given time, but both are unanimous in their conclusions that Mr. Montz fatigues easily and requires a great deal of rest, such that he has a need to be absent on a chronic basis after any level of exertion

because of these conditions. This unanimous opinion between the two is patently inconsistent with Montz being capable of fulltime work in any capacity.

25. Nevertheless, in a letter dated July 15, 2022, LTD Specialist II Francine Knox, on behalf of Lincoln, informed that her claims unit was terminating and closing Montz's claim because it found its own review of Montz's medical records was more reliable than the professional clinical observations and conclusions of his physicians who had interacted with, observed, evaluated and assessed Montz in person.

26. Lincoln, through Ms. Knox's claims team, then performed a flawed vocational review that deviated from policy terms by failing to take into account Montz's advanced age and whether he could transition into a completely new occupation at a "median" earnings level as opposed to an entry-level earnings level.

27. Montz, having then retained counsel, appealed the termination of his benefit and contended that Lincoln's termination was an arbitrary and capricious reversal of his benefit both because of its infirm assessment of his medical information and because of the flawed vocational evaluation it had performed.

28. That appeal was sent December 21, 2022, via facsimile and U.S. certified mail.

29. Lincoln thereafter acknowledged its receipt of its appeal on that same date in a letter dated December 30, 2022, and informed of the following:

> In accordance with the Employee Retirement Income Security Act, under normal circumstances, you will be notified in writing of a final decision within 45 days from the date your request for review was received, excluding any days in which we are waiting for you to submit documentation. We will contact you if there are special circumstances requiring a delay in Lincoln's response, and you will be notified of our decision no later than 90 days after the request for review was received.

30. On January 26, 2023, Lincoln sent a letter to counsel for Montz indicating that Montz's execution of a new authorization enabling to obtain Montz's medical information was needed for it to continue with its review. The requested authorization was attached to its letter.

31. On January 30, Lincoln sent a letter "advising … that there are special circumstances requiring a delay in Lincoln's response and once we receive the acceptable [authorization] form from your office we will proceed with our appeal investigation."

32. On February 6, 2023, Montz, through counsel, provided Lincoln via facsimile with the renewed authorization it had requested, and stated, "we will now consider the tolling mentioned in your letter to have been lifted."

33. On February 8, 2023, Lincoln sent a letter acknowledging its receipt of the authorization and indicating that its review had been "suspended while waiting for a valid authorization from Mr. Montz" and indicating again it had exercised a "right to take an extension under the Employee Retirement Income Security Act."

34. On March 9, 2023, Lincoln sent a letter attaching new medical reviews and a new vocational review, and informed for the second time that Lincoln sought to avail itself an 45-day extension while it awaited Montz's response to the new

items. It gave Montz until April 7, 2023, to provide that response.

35. Montz, through counsel, responded quickly to indicate that the reviews that were provided failed to respond to his appeal or rebut any of the information included with it, and urged again for the immediate reinstatement of Montz's benefit.

36. On March 24, 2023, Lincoln sent a letter indicating that the claim had been reassigned to a new appeals consultant "for further appeal review." This letter also reiterated again Lincoln's intent to avail itself of a 45 day extension in which to issue a decision, thus enlarging its timeframe for deciding Montz's appeal to 90 total days, without consideration given for any possible tolling.

37. Confused by this third reference to an "extension" and seeking to clarify when a decision could be expected, Montz, through counsel, sent a letter dated March 28, 2023 reading as follows, in its entirety:

Dear Ms. Berry:

This is to acknowledge and thank you for your letter dated March 24, 2023, which I received this past Friday (attached hereto Bates numbered Montz 2332-2333). I am concerned about the substance of your letter suggesting that Lincoln is intending to avail itself of yet another 45-day extension. Since Mr. Montz lodged his appeal on December 21st, we have received two different letters from Lincoln claiming a 45-day extension. The first letter was dated January 30, while the second was dated March 9. Now we have your letter last week representing the third extension request.

As you are undoubtedly aware, only one 45-day extension is permitted where special circumstances are shown. Giving Lincoln Financial the benefit of the doubt that a special circumstance indeed has occurred during the pendency of this appeal, and further giving Lincoln Financial the benefit of tolling for the period between the requested renewal of Mr. Montz's authorization to the date that he provided it (which was 7 days), Lincoln will have had 97 days to render a decision on this claim. This means that Lincoln's deadline for deciding this claim is today, March 28th.

If Lincoln disagrees with this calculation, please explain why so that we can consider next steps. I will await your response by this coming Monday, April 3, 2023. It seems that it is time to make a decision so we request that one be issued pursuant to the time periods applicable under Department of Labor regulations and

[***page break***]

plan terms. Mr. Montz has been waiting quite some time, and is growing understandably frustrated, because he has been without income for quite a long time at this point. Your urgency is appreciated.

38. In a letter dated March 29, 2023, Lincoln responded to Montz's letter, clarifying its interpretation of its deadline for deciding Montz's appeal when considering both tolling and its availment of the single 45-day extension to which it was entitled upon the identification of "special circumstances" under Department of Labor regulations. That letter reads as follows, in its entirety:

To Whom It May Concern:

Responding to your March 28, 2023 letter. Mr. Montz's appeal was received December 21, 2022. We tolled for the authorization for 12 days from January 26 to February 6. We tolled for right to review and respond for 13 days from March 9 to March 21. Our new 90th day, the deadline for a decision, is April 14, 2023.
If you have any questions regarding this matter, please contact me.

39. Notwithstanding its identification of April 14 being its deadline with its extension exhausted, Lincoln sent a letter dated April 11 indicating that it had since concluded *another* medical review to which it wanted Montz to respond, even though it was out of time and the new review had not been completed until just 3 days before its deadline by its own measurement.

40. In that letter, Lincoln seeks to claim "tolling", while at the same time indicating that it need not receive any response at all from Montz to render a decision.

41. As of the filing of this action, no written decision has been received from Lincoln; accordingly, Montz is now deemed to have exhausted his administrative remedies under Department of Labor regulations.

42. Documents identified thus far by Montz as being part of his claim file also establish numerous other breaches and errors committed by Lincoln during the course of administering Plaintiff's claim, including:

(a) The targeting of Plaintiff's claims for denial because ERISA governs;

(b) The failure by Lincoln to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(c) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of his claim through an overall failure to communicate with Plaintiff about the claim;

(d) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all of his claim;

(e) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f) Failing to accord any weight to Plaintiff's medical providers and other examiners who personally examined the Plaintiff, some on a regular basis;

(g) Failing to adhere to the terms of the Plan, including as to the timely issuance of a written decision and those governing its own disability definition;

(h) Failing to give meaningful consideration to Plaintiff's Social Security disability determination;

(i) Purposefully limiting and curtailing the review of its medical personnel and otherwise improperly exerting influence on them to opine against payment of benefits; and

(j) Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff and instead relying on the demonstrably deficient report of a biased and unqualified doctor to perform an incomplete review of only records.

43. Despite Plaintiff's established disability and entitlement to coverage under the terms of the Plan, Lincoln determined that Plaintiff was not "disabled" and that he did not qualify for LTD benefits.

44. As set forth above in connection with Lincoln's fiduciary breaches, Lincoln's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their decision.

45. This conflict of interest further calls into question the credibility of Lincoln's claims personnel and reviewers.

46. Lincoln did not provide Plaintiff with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29

C.F.R. 2560.503-1, and instead actively tried to subvert Plaintiff's ability to protect his right to such a review.

47. Lincoln's decision process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations. In fact, no written decision was issued at all within the time required. Instead, Lincoln has provided post hoc rationalizations for its denial of Plaintiff's appeal.

48. Plaintiff has exhausted all Plan remedies even though Lincoln's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ricky W. Montz respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

a. For an order against Lincoln awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b. For a judgment against Lincoln awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c. For an order requiring Lincoln to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d. Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**<u>Plaintiff's Address:</u>**

Ricky W. Montz
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Lincoln National Life Insurance Company
c/o The Prentice-Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery, AL 36104